| | |
|---|---|
| ADRIENNE YOUNG and JULIEN McDOWALL,  Plaintiffs,  v.  KATHLEEN BAUSMAN, Field Office Director, U.S. Citizenship & Immigration Services, WILLIAM BARR, Attorney General, [1] LEE FRANCIS CISSNA, Director of USCIS, CHAD F. WOLF,[2] Acting Secretary, U.S. Department of Homeland Security,  Defendants. | CIVIL ACTION   NO.  19-1870 |

**DuBois, J.**                                                          **February 27, 2020**

### M E M O R A N D U M

## I.    INTRODUCTION

This is an immigration case arising out of two adverse decisions by the United States

Citizenship and Immigration Services ("USCIS" or "Agency").  Plaintiffs Adrienne Young and

Julien McDowall challenge USCIS's December 5, 2017 denial of both Young's I-130 Petition

and McDowall's I-485 Application as arbitrary and capricious under the Administrative

Procedure Act ("APA").  Plaintiffs also argue that USCIS exceeded its statutory authority and

that the Agency's "denial of the I-130 Visa Petition" violated their "constitutional rights to due

process."  Presently before the Court is the Government's Motion for Summary Judgment and

Plaintiffs' Cross Motion for Summary Judgment.  For the reasons that follow, the Court grants

---

[1]       William Barr became the Attorney General on February 14, 2019.
[2]       Chad F. Wolf became the Acting Secretary, U.S. Department of Homeland Security on November 13, 2019.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Chad F. Wolf is substituted for Kevin K. McAleenan as a defendant in this suit.

the Government's Motion for Summary Judgment and denies plaintiffs' Cross Motion for

Summary Judgment.

## II.   BACKGROUND

The USCIS 2017 determination of Young's I-130 Petition and McDowall's I-485

Application—at issue in this lawsuit—is based on the 2014 denial of Victoria Johnson's I-130

Petition.  Accordingly, the Court will first briefly discuss Johnson's 2014 I-130 Petition before

turning to Young's 2017 I-130 Petition and McDowall's I-485 Application.

### A.  Julien McDowall's Previous Marriage to Victoria Johnson And Her I-130 Petition on His Behalf

On December 20, 2010, Victoria Johnson, a United States citizen, married Julien

McDowall, a citizen of Trinidad and Tobago.  Certified Admin. R. A001, A346.[3]  On November

2, 2012, Johnson filed a Petition for Alien Relative ("I-130 Petition") on McDowall's behalf,

seeking reclassification for McDowall as an "immediate relative."  A001-2.  On February 19,

2013, USCIS interviewed Johnson and McDowall.  A0041.  On October 25, 2013, USCIS issued

a Notice of Intent to Deny ("NOID") to Johnson, in which it concluded that "[s]ubstantive and

probative evidence from your interview and an investigation into your relationship has

established that your marriage to [McDowall] is a marriage of convenience entered into for the

sole purpose of evading the immigration laws of the United States."  A0045-49.  The NOID

thoroughly discussed the reasons for its conclusion that McDowall's marriage to Johnson was

fraudulent.  A0045-49; *see infra*.  Johnson never responded to the NOID.  A0088.  USCIS issued

a decision denying Johnson's I-130 Petition on Mach 3, 2014 based on the reasons it previously

detailed in the 2013 NOID with respect to Johnson's I-130 Petition.  A0084-91.

---

[3]      The Court will not consider the exhibits plaintiffs attached to their cross motion for summary judgment.
*See Camp v. Pitts*, 411 U.S. 138, 142 (1973).

**B. McDowall's Marriage to Adrienne Young and Her I-130 Petition on His Behalf**

Johnson and McDowall divorced on January 29, 2015. A0113. On March 9, 2015, McDowall married plaintiff, Adrienne Young. A0111. Young filed an I-130 Petition with supporting documentation on McDowall's behalf on July 22, 2015. A0100-246. McDowall filed an I-485 Application to Adjust Status to permanent residency that was derivative of Young's I-130 Petition. A0253. Young and McDowall were interviewed by USCIS on February 3, 2016. A0279.

Following the interview, the Agency issued a NOID on August 15, 2017, reiterating its prior conclusion that McDowall's prior marriage to Johnson was fraudulent, so USCIS could not grant Young's I-130 Petition. A0274-82.

The 2017 NOID discussed—at length—the reasons for the Agency's conclusion that McDowall's prior marriage to Johnson was fraudulent:

First, USCIS recounted the notes of the interviewing officer from the February 19, 2013 interview of McDowall and Johnson. A0276. The USCIS investigator noted the following: (1) Johnson and McDowall had different stories about the gifts they exchanged on Valentine's day, which was only a few days prior to the interview; (2) Johnson claimed that a flood forced them from their marital residence for two years, but McDowall stated that the flood only affected them for two weeks; (3) Johnson was combative when she was requested to fill out Form G-325A (biographical information) that she failed to submit with the I-130 Petition; (4) Johnson spent over thirty minutes trying to complete the residence portion of the form and claimed she couldn't remember where she lived for the past five years, did not complete the form, and argued with McDowall while trying to complete the form; and (5) Johnson admitted that she often separated from McDowall because of arguments. A0276.

Second, the Agency discussed the evidence Johnson submitted with the I-130 Petition—

an affidavit from James Gonsalves, a 2010 IRS Tax Transcript, and a 2011 IRS Tax Transcript. A0276. The affidavit from James Gonsalves made no mention of Johnson and McDowall's marriage, so USCIS determined that it did not provide any support of a bona fide marriage between Johnson and McDowall. *Id.* USCIS concluded that the 2010 and 2011 Tax Transcripts supported a claim for a bona fide marriage "on the surface," but stated that the evidence provided by these documents was outweighed by the significant derogatory information in the record. *Id.* Additionally, USCIS noted that Johnson and McDowall claimed that "all their information and documentation for their residence was destroyed in a flood, they failed to provide any updated records or evidence that they contacted or attempted to contact any institution or business for prior or present records." *Id.* The Agency asserted that "it is inconceivable that [Johnson and McDowall] would not retain any other documentary evidence to support the petition" since they had been married for two years prior to their interview with USCIS. *Id.*

Third, the Agency detailed the findings of its 2013 investigation into the validity of McDowall and Johnson's marriage, and "found that their marriage was fraudulent and entered into for the sole purpose of evading immigration laws." A0277. On June 19, 2013, USCIS investigators interviewed Thomas Johnson, Victoria Johnson's father. *Id.* Johnson's father stated that Victoria Johnson never informed him that she was married. *Id.* He also said that Victoria and McDowall never resided together and that his daughter was homeless. *Id.* He further stated that it had been around six months since he last saw his daughter. *Id.*

Next, USCIS investigators visited the claimed joint marital residence at 500 East Rittenhouse Street, Philadelphia, PA 19144—where Johnson and McDowall allegedly resided. *Id.* Upon arrival, the investigators saw that the residence had multiple boarded up windows with a generator on the porch. *Id.* An electrical cord extended from the generator into the house, but

4

the generator was not running.  *Id.*  The investigators on the door knocked several times but received no answer.  *Id.*  They also observed mail hanging on the front door that was addressed solely to Dominique Gonsalves Rose and Daliah Gonsalves.  *Id.*  USCIS also noted the efforts of the Buck's County Sheriff's Office to contact Johnson at three different addresses, including the claimed marital address—without success.  A0277.

The investigators also determined that Johnson lived at the Drueding Center, which assists homeless individuals and others with various complex life situations, from March 3, 2012 to October 16, 2012.  A0278.  This information corroborated the statement by Johnson's father that Victoria Johnson was homeless.  *Id.* This residency at the Drueding Center "occurred during the same time [Johnson] allegedly resided with the beneficiary at the claimed marital address and during the same time [Johnson] claimed to be in a bona fide marital relationship with [McDowall]."  *Id.*

Fourth, USCIS discussed Victoria Johnson's Pennsylvania Driver's License, which was issued on February 5, 2013 to the claimed marital residence.  A0277.  The Agency noted that the license was issued only two weeks prior to the USCIS interview despite that Victoria Johnson alleged on her Form G-325A that she resided at the marital address since 2009.  *Id.*  This led USCIS to assert that it appeared that "Victoria changed this address for immigration purposes."  *Id.*

Fifth, USCIS addressed Julien McDowall's divorce from Lisa McDowall—his first wife.  A0277.  Johnson submitted a 2008 divorce decree between Julien McDowall and Lisa McDowall with her I-130 Petition as proof that Johnson's marriage to Julien McDowall was legitimate.  A0048.  USCIS received the entire divorce case from the Prothonotary and Clerk of Courts of Potter County Pennsylvania related to the alleged divorce between Julien McDowall and Lisa

McDowall. A0277. According to the Acceptance of Service 3301D and Waiver of Notice of Intention to Transmit Record, Lisa McDowall accepted service of the divorce complaint and other documents on October 5, 2008 at 501 East Haines Street in Philadelphia. *Id.* However, "Department of Homeland Security travel records establish[ed] that Lisa McDowall was not present in the U.S. at the time the documents were served and accepted." *Id.* Furthermore, Lisa McDowall's signature on her Nonimmigrant Visa Application signed on March 17, 2000, "shows a signature that [did] not resemble the signature on the divorce complaint in any manner." A0277-78. "Based on the fact that Lisa McDowall was not present in the U.S. on the pertinent dates pertaining to the divorce, and the fact that her signature did not match a comparable copy, USCIS found that this marriage was not lawfully terminated, dissolved, or annulled." A0278.

USCIS also discussed how Young submitted evidence that McDowall divorced Lisa McDowall in Trinidad and Tobago on November 16, 2010 but failed to provide the same supporting documentation at the February 19, 2013 interview. A0278. USCIS stated that it was unclear why McDowall "omitted this information to USCIS, unless it was because the true facts would render him ineligible for approval of the visa petition." *Id.* USCIS then concluded that McDowall could not "be deemed a credible witness to his claim of having entered into a bona fide marriage" with Johnson because "it is clear" that he "played the primary role in obtaining a divorce from Lisa McDowall through fraudulent means." *Id.*

Sixth, USCIS noted that it issued a NOID to Johnson on October 25, 2013 "describing the results of the interview and the evidence provided, and the results of the USCIS investigation." A0278. The 2013 NOID stated the Agency "determined that the marriage between [Johnson] and [McDowall] was a fraudulent marriage entered into for the sole purpose

of evading immigration laws." *Id.* The 2013 NOID also stated that Johnson and McDowall were not free to marry because McDowall was still legally married to Lisa McDowall. *Id.*

Seventh, the Agency discussed the fact that Johnson did not respond to the NOID. A0278. Instead, McDowall responded and submitted and an affidavit on his behalf requesting more time. *Id.* He also submitted an affidavit from Daliah Gonsalves, and an affidavit from Demetrius Rose. *Id.* USCIS did not honor McDowall's request for more time because he was not the moving party with respect to the I-130 Petition and a response to an NOID must "be provided within 30 days (33 days if mailed)." *Id.* USCIS discussed the affidavits from Daliah Gonsalves and Demetrius Rose and found that these affidavits "did not establish a bona fide marriage" between McDowall and Johnson. *Id.* Finally, USCIS stated that Johnson's I-130 Petition was denied because she failed to respond to the NOID and address the results of the USCIS interview and investigation. A0279.

USCIS then addressed the evidence that Young submitted with the I-130 Petition to rebut the Agency's conclusion that McDowall's prior marriage to Johnson was fraudulent. A0281-82. This evidence included, *inter alia*: (1) an affidavit from McDowall; (2) court documentation addressed to Johnson at the claimed marital residence; (3) Philadelphia police documentation addressed to McDowall at the claimed marital address; (4) an affidavit from Daliah Gonsalves; (5) copies of photographs "that appear to be of [Johnson] and [McDowall]; (6) a Republic Bank statement addressed to Johnson and McDowall at the prior claimed marital address; and (7) "PFCU blank checks addressed [McDowall] at the prior claimed marital address." A0100-246. USCIS concluded that McDowall's affidavit did not "explain[] away the results of [Johnson and McDowall's] interview and the results of [the] USCIS investigation." A0282. Further, USCIS also found that "the additional evidence submitted with [Young's] petition . . . [did] not

7

overcome the issues presented by USCIS." *Id.*

The 2017 NOID stated that "USCIS maintains the position that the marriage between [Johnson] and [McDowall] was fraudulent," which precluded approval of Young's I-130 Petition. *Id.* The 2017 NOID also included a finding that Young's marriage to McDowall was not bona fide—a finding that USCIS later reversed. A0279-82, A0477. The NOID invited Young to respond within 30 days. A0282.

Young responded to the NOID on September 13, 2017. A0336. Young and McDowall each submitted an affidavit and Young provided additional documentary evidence in support of her Petition. A0336-474. McDowall's affidavit addressed the numerous facts reported in the August 15, 2017 NOID, that supported USCIS's conclusion that his marriage to Johnson was fraudulent. A0346-52. Young submitted the following documents that related to McDowall's prior marriage to Johnson in response to the NOID: (1) a July 13, 2005 letter from Theodora Perryman to McDowall; (2) McDowall's July 22, 2005 response to Perryman; (3) a June 30, 2006 Western Union receipt from Julien McDowall to Lisa McDowall; (4) an August 11, 2010 Western Union receipt from Julien McDowall to Lisa McDowall; and (5) photographs of Johnson and McDowall. A0336-474.

USCIS denied Young's I-130 Petition on December 5, 2017 on the ground that McDowall "previously entered into a fraudulent marriage with [Johnson] in an attempt to obtain an immigration benefit." A0478, A0481. USCIS, after reviewing all the additional evidence submitted by Young and McDowall, maintained that McDowall's marriage to Johnson was not bona fide and therefore Young's I-130 Petition could not be approved. A0477. The Agency stated that there was "no additional evidence submitted in response" to the NOID "that would support a finding that [Johnson] and [McDowall] entered into a bona fide marriage." A0477. It

8

went on to assert that the documentation submitted by plaintiffs in response to the NOID lacked

"any substantive evidence that would overcome the significant derogatory information

establishing [McDowall's] prior marriage to [Johnson] was a sham." *Id.* USCIS concluded that

approval of Young's I-130 Petition was "prohibited under INA 204(c) because [McDowall]

previously entered into a fraudulent marriage with [Johnson] in an attempt to obtain an

immigration benefit." A0478. USCIS also denied McDowall's I-485 Application on December

5, 2017 because it was derivative of Young's I-130 Petition. A0481. Plaintiffs did not appeal

USCIS's decision.

Plaintiffs filed this lawsuit on April 30, 2019 (Document No. 1). Defendants moved for

summary judgment on July 12, 2019 (Document No. 5). Plaintiffs filed a cross motion for

summary judgment on September 18, 2019 (Document No. 11). Both motions are fully briefed

and are thus ripe for decision.

## III.    LEGAL STANDARD

The parties seek review under the APA. "While summary judgment is the proper

mechanism for deciding, as a matter of law, whether an agency decision is supported by the

administrative record and consistent with the APA standard of review because the district judge

sits as an appellate tribunal in such cases, the usual summary judgment standard does not apply."

*Elfeky v. Johnson*, 232 F. Supp. 3d 695, 706 (E.D. Pa. 2017) (DuBois, J.) (quoting *Uddin v.

Mayorkas*, 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012)). Under the APA, a court may only set

aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law." 5 U.S.C. § 706(2)(A). The scope of review under the APA "is

narrow, and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs.

Ass'n of U.S., Inc. v. State Farm Auto Ins. Co.*, 463 U.S. 29, 43 (1983). "Reversal is appropriate

only where the administrative action is irrational or not based on relevant factors." *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006). In determining whether an agency acted arbitrarily and capriciously, a district court considers "whether the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence." *Id.* An agency's decision "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001) (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

## IV.    DISCUSSION

### A.  Count I: Violation of the APA

Plaintiffs argue that USCIS's denial of Plaintiffs' I-130 Petition and I-485 Application violated the APA because "the decision [was] arbitrary, capricious and [was] not supported by substantial and probative evidence." Compl. ¶ 33. The Court disagrees.

A United States citizen may apply for her alien spouse to obtain lawful permanent residence by filing an I-130 Petition with USCIS. 8 C.F.R. §§ 204.1(a)(1), 204.2(a). However, USCIS cannot approve an I-130 Petition filed on behalf of an alien beneficiary if "the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or [] the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c).

If "USCIS discovers evidence supporting marriage fraud, it will issue a [NOID], inform the petitioner of its reasons for denial, and allow the petitioner to present rebuttal evidence."

*Keita v. Barr*, No. CV 19-980, 2019 WL 5551425, at *5 (E.D. Pa. Oct. 28, 2019). Once "USCIS

issues a NOID, the burden of proof is on the petitioner to establish that the prior marriage was

not entered for the purpose of evading immigration laws." *Id.*; *Salvador v. Sessions*, No. CV 18-

01608, 2019 WL 1545182, at *3 (E.D. Pa. Apr. 9, 2019); *see also Matter of Laureano*, 19 I&N

Dec. 1, 3 (BIA 1983) ("[W]here there is reason to doubt the validity of the marital relationship,

the petitioner must present evidence to show that the marriage was not entered into for the

purpose of evading the immigration laws."); *Matter of P. Singh*, 27 I&N Dec. 598, 605 (BIA

2019). After considering all the relevant evidence, "USCIS may then deny an I-130 petition

where there is substantial and probative evidence of marriage fraud," which the government

bears the burden of proving. *Keita*, 2019 WL 5551425, at *5; *Salvador*, 2019 WL 1545182, at

*3 ("The government bears the burden of proving marriage fraud by establishing substantial and

probative evidence that the prior marriage was a sham."); *Matter of Tawfik*, 20 I&N Dec. 166,

167 (BIA 1990). "Substantial evidence is 'more than a scintilla, but . . . something less than a

preponderance of the evidence.'" *Salvador*, 2019 WL 1545182, at *3 (quoting *Fla. Gas

Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010)).[4]

In this case, after reviewing Young's I-130 Petition and the supporting documentation,

USCIS reiterated its determination in 2013 that there was substantial and probative evidence that

McDowall's prior marriage to Johnson was fraudulent, and it articulated the evidence supporting

its conclusion in the 2017 NOID issued to Young. A0274-82. The evidence USCIS articulated

was, *inter alia*: (1) the inconsistencies between Johnson and McDowall's statements in their

---

[4]     The Court notes that in August 2019, several months after this action was commenced, the Board of
Immigration Appeals defined "substantial and probative evidence" as "more than a preponderance of evidence, but
less than clear and convincing evidence; that is, the evidence has to be more than probably true that the marriage is
fraudulent." *Matter of P. Singh*, 27 I&N Dec. 598, 598 (BIA 2019). However, USCIS applied the correct standard
of proof in this case as it was defined at the time of the Agency's decision—USCIS found substantial and probative
evidence of marriage fraud.

interview, including how McDowall claimed that a flood kept them from their marital address

for two weeks, while Johnson said that it had been two years; (2) the fact that Johnson and

McDowall claimed that all their documentation for their residence was destroyed in a flood, but

failed to provide "any updated records or evidence that they contacted or attempted to contact

any institution or business for prior or present records," which the Agency asserted was

inconceivable since they had been married for two years prior to their interview with USCIS; (3)

the statements of Johnson's father that his daughter was not married, that she was homeless, and

that she did not reside with McDowall; (4) USCIS's visit to Johnson and McDowall's claimed

marital address where the residence appeared abandoned and none of the mail at the residence

was addressed to either Johnson or McDowall; (5) Johnson's residency at the Drueding Center,

which contradicted her statements to USCIS and corroborated her father's statements to USCIS

investigators; (6) Julien McDowall's purported Pennsylvania divorce from Lisa McDowall,

where USCIS concluded that McDowall could not "be deemed a credible witness to his claim of

having entered into a bona fide marriage" with Johnson because "it is clear" that he "played the

primary role in obtaining a divorce from Lisa McDowall through fraudulent means."  A0274-82.

Young then responded to the 2017 NOID in an effort to rebut the Agency's conclusion

that McDowall's prior marriage to Johnson was fraudulent, and to establish that McDowall's

prior marriage was not entered into for the purpose of evading immigration laws.  A0336-474.

In her response, Young and McDowall each submitted an affidavit.  A0336-474.  Young also

provided additional documentary evidence.  A0336-474.

Following Young's response to the 2017 NOID, USCIS concluded, after weighing all the

available evidence, that the documentation submitted by Young lacked "any substantive

evidence that would overcome the significant derogatory information establishing [McDowall's]

12

prior marriage to [Johnson] was a sham." A0475-78. USCIS found that Young failed to meet

her burden "to establish that [McDowall's] prior marriage was not entered for the purpose of

evading immigration laws." *Keita*, 2019 WL 5551425, at \*5.[5] The Agency denied Young's I-

130 Petition because it concluded that McDowall "previously entered into a fraudulent marriage

with Victoria [Johnson] in an attempt to obtain an immigration benefit." A0478.

The Court concludes that the Agency's decision to deny Young's I-130 Petition was not

arbitrary, capricious, or an abuse of discretion. The decision was firmly based on all the

available evidence and was a reasonable interpretation of the evidence. Because McDowall's I-

485 Application was derivative of Young's I-130 Petition, the denial of his I-485 Application

was likewise not arbitrary, capricious, or an abuse of discretion. Accordingly, the Court grants

the Government's Motion for Summary Judgment on Count I of the Complaint and denies

Plaintiffs' Cross Motion for Summary Judgment on Count I of the Complaint.

**B. Count II: USCIS Exceeding Its Statutory Authority**

Count II of the Complaint asserts that USCIS's NOID violated 8 C.F.R. § 103.2(b)(16)(i).

Compl. ¶ 38. In their Cross Motion for Summary Judgment, plaintiffs argue that they were

"never given an adequate opportunity to inspect and rebut the evidence relied upon by" USCIS

because they were never provided the Investigative Report, the Administrative Record prior to

these proceedings, and were never provided the "photographs of the building." Pls.' Cross Mot.

Summ. J. at 32. Plaintiffs are incorrect.

Regulation 8 C.F.R. § 103.2(b)(16)(i) states that if the Agency intends to issue a decision

---

[5]     Plaintiffs argument in Count I of the Complaint that USCIS "applied an improper standard of proof by
shifting the burden of proof to the Plaintiffs to establish that the prior marriage was bona fide" is meritless. Compl.
¶ 34. USCIS first issued a NOID in which it reiterated its conclusion, and the evidence that formed the basis of its
conclusion, that there was substantial and probative evidence that McDowall's prior marriage to Johnson was
fraudulent. A0045-49, A0274-82. The burden then properly shifted to Young "to establish that [McDowall's] prior
marriage was not entered for the purpose of evading immigration laws." *Keita*, 2019 WL 5551425, at \*5. USCIS
applied the correct burden of proof in this case.

that will be adverse to the petitioner and "is based on derogatory information" of which the petitioner is unaware, she shall be advised of the derogatory information "and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." 8 C.F.R. § 103.2(b)(16)(i). However, "[t]he regulation does not require the government to turn over the evidence in its primary form." *Zizi v. Bausman*, 306 F. Supp. 3d 697, 704-05 (E.D. Pa. 2018), *aff'd sub nom. Zizi v. Field Office Dir.*, 753 F. App'x 116 (3d Cir. 2019). A summary is sufficient to meet the requirements of 8 C.F.R. § 103.2(b)(16)(i). *Id.*; *Salvador v. Sessions*, No. CV 18-01608, 2019 WL 1545182, at \*6 (E.D. Pa. Apr. 9, 2019).

In this case, when USCIS provided Young with the 2017 NOID, it advised her of the all derogatory information it had in its possession that it intended to rely on and gave her 30 days to respond. A0274-82. The Court concludes that USCIS complied with 8 C.F.R. § 103.2(b)(16)(i). Accordingly, the Government's Motion for Summary Judgment on Count II is granted. Plaintiffs' Cross Motion for Summary Judgment on Count II of the Complaint is denied.

### C. Count III: Violation of Due Process

Count III of the Complaint asserts that USCIS's "denial of the I-130 Visa Petition violates Plaintiffs' constitutional rights to due process." Compl. ¶ 40. Plaintiffs do not articulate whether their due process claim is substantive or procedural; therefore, the Court will address both.

Plaintiffs have no substantive due process right to a favorable adjudication of an I-130 Petition. Plaintiffs argue that the dissent in *Kerry v. Din*, 575 U.S. 86 (2015), and Justice Kennedy's opinion for the majority in *Obergefell*, support their argument that their due process rights were violated by USCIS. Pls.' Cross Mot. Summ J. at 30-2. However, the Third Circuit recently rejected a nearly identical argument. *See Bakran v. Sec'y, United States Dep't of*

14

*Homeland Sec.*, 894 F.3d 557, 565 n.7 (3d Cir. 2018). While Young has a fundamental right to

marry the spouse of her choice, *see Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015), "no

court has recognized that a citizen spouse has a constitutional right to have his or her alien

spouse reside in the United States," *Bakran*, 894 F.3d 557, 565 n.7; *Fasano v. United States*, 230

F. App'x 239, 240 (3d Cir. 2007) ("The Constitution 'does not recognize the right of a citizen

spouse to have his or her alien spouse remain in the country.'"); *Iredia v. Fitzgerald*, No. CIV.A.

10-228, 2010 WL 2994215, at *5 (E.D. Pa. July 27, 2010) ("A citizen has no constitutional or

statutory liberty interest in having their alien spouse remain in the country."); *see also Quansah

v. Sessions*, No. CV 17-4334, 2018 WL 401791, at *8 (E.D. Pa. Jan. 12, 2018) (denying

substantive due process claim); *Mairykeeva v. Barr*, 378 F. Supp. 3d 391, 398 (E.D. Pa. 2019)

(denying substantive due process claim). Although USCIS's finding that McDowall's prior

marriage to Johnson was fraudulent restricts his access to certain immigration benefits, it does

not deprive Young "of [her] fundamental right to marry or a benefit uniquely available to

married persons." *Bakran*, 894 F.3d 557, 566. Accordingly, plaintiffs' substantive due process

claim fails.

Turning to plaintiffs' procedural due process claim, they argue that USCIS violated their

right to due process because Young "never received a notice of the evidence relied upon by

USCIS in adjudicating the Visa Petition" and she "had never been given an opportunity to

disprove" the derogatory facts provided by USCIS. Pls.' Cross Mot. Summ. J. at 30-2. This

argument is meritless.

"Procedural due process imposes constraints on governmental decisions which deprive

individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of

the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333. Courts in this district have ruled that "[b]ecause the grant of an I-130 Petition for immediate relative status is a property interest encompassed by the Fifth Amendment, it is entitled to [procedural] due process protections." *Salvador*, 2019 WL 1545182, at *5. In the immigration context, due process requires three things. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). "An alien: (1) is entitled to 'factfinding based on a record produced before the decisionmaker and disclosed to' him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to 'an individualized determination of his [or her] interests.'" *Id.* (internal citations omitted). "[T]he question for [procedural] due process purposes is not whether [USCIS] reached the correct decision; rather, it is simply whether the [Agency] made an individualized determination of [Young's] interests." *Id.* at 550.

In this case, USCIS provided ample due process to plaintiffs. The Agency: (1) reviewed Young's I-130 Petition and the attached documents; (2) interviewed plaintiffs; (3) investigated the evidence submitted by plaintiffs; (4) provided plaintiffs with a NOID that thoroughly laid out all the derogatory information the Agency intended to rely on and gave Young 30 days to respond; (5) reviewed the additional documents submitted by plaintiffs to rebut the NOID; and (6) issued a written decision based on the evidence in the record. *See supra* Part II. Young was clearly given the "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. 319, 333. Accordingly, the Court concludes that USCIS's procedures complied with the minimum levels of due process required by the Fifth Amendment. The Government's Motion for Summary Judgment on Count III is granted. Plaintiffs' Cross Motion for Summary Judgment on Count III of the Complaint is denied.

## V. CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment is granted. Plaintiffs' Cross Motion for Summary Judgment is denied.  Judgment is entered in favor of the defendants, Kathleen Bausman, Field Office Director, U.S. Citizenship & Immigration Services, William Barr, Attorney General, Lee Francis Cissna, Director of USCIS, and Chad F. Wolf, Acting Secretary, U.S. Department of Homeland Security, and against plaintiffs, Adrienne Young and Julien McDowall, on Counts I, II, and III of the Complaint.  An appropriate order follows.